# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 6, 2011                  Decided July 15, 2011

No. 10-7100

JAMES C. STEPHENS AND RICHARD MAHONEY,
APPELLANTS

v.

US AIRWAYS GROUP, INC., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01264)

———

*Jacks C. Nickens* argued the cause for appellants. With him on the briefs was *Robert P. Trout*. *Paul D. Flack* entered an appearance.

*Jean M. Breen* argued the cause for appellee Pension Benefit Guaranty Corporation. With her on the brief were *Israel Goldowitz*, *Stephanie L. Thomas*, *Mark R. Snyder*, and *Colin B. Albaugh*.

2

Before: HENDERSON, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

Opinion concurring in the judgment filed by *Circuit Judge* KAVANAUGH.

Opinion dissenting in part filed by *Circuit Judge* HENDERSON.

BROWN, *Circuit Judge*: James Stephens and Richard Mahoney (collectively "Plaintiffs") are retired U.S. Airways pilots. Each received pensions from the U.S. Airways pension plan ("the Plan"). And each opted to receive his pension in a single lump sum rather than as an annuity. The Plan paid those lump sums 45 days later than Plaintiffs would have received their first checks had they chosen the annuity option. Plaintiffs sued U.S. Airways, claiming the Plan owed them interest for its 45-day delay. The district court disagreed. We now reverse in part and affirm in part, remanding for further consideration consistent with this opinion.

I

James Stephens and Richard Mahoney retired from their jobs as U.S. Airways pilots in 1996 and 1999, respectively. Both pilots qualified for a pension under the U.S. Airways pension plan. The Plan's default pension was an annuity, to be paid in monthly installments. But the Plan also allowed a retiree to receive his pension as a single lump sum payment actuarially equivalent to the projected value of all annuity payments. Plaintiffs chose to receive their pensions as lump sums.

The Plan provided that annuity payments would begin on the first day of the month after the pilot retired (and retirement was mandatory at age 60). If the retiring pilot elected the lump sum option, however, the Plan did not actually pay that lump sum until 45 days after the first day of the month after the pilot retired. In other words, the Plan paid lump sum pensions 45 days later than Plaintiffs would have received their first payments had they selected the annuity option. U.S. Airways claimed this delay was administratively necessary because of additional calculations and precautions it takes when issuing lump sums. Important to the present dispute, the delayed lump sum payments did not include any interest for the 45 days that elapsed between the annuity start date and the date lump sum recipients actually received their payments.

Stephens and Mahoney each received their lump sum pensions 45 days after their annuity start date. Stephens received $488,477.22. Mahoney received $672,162.79. Applying the 6.25% interest rate suggested by Plaintiffs' expert, Stephens should have received $3,665.06 in interest on his lump sum payment for the 45-day delay, and Mahoney should have received $5,043.25 in interest on his payment.

In 2000, Stephens and Mahoney sued U.S. Airways for the interest on the 45 day delay. According to Plaintiffs, U.S. Airways' refusal to pay interest violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), which requires the Plan's lump sum payments to be the "actuarial equivalent" of the Plan's annuity payments. 29 U.S.C. § 1054(c)(3). Plaintiffs separately alleged that the terms of the Plan required U.S. Airways to pay lump sums on the annuity start date.

4

Plaintiffs initially sued U.S. Airways in the U.S. District Court for the Northern District of Ohio. In 2003, the Plan was terminated due to U.S. Airways' bankruptcy, and the Pension Benefit Guaranty Corporation ("PBGC") became the Plan's trustee. *See id*. § 1342. In 2007, the case was therefore transferred to the U.S. District Court for the District of Columbia.

In two decisions—the first on a motion to dismiss and the second on a motion for summary judgment—the district court rejected all of plaintiffs' claims. We review those decisions *de novo*. *See Winder v. Erste*, 566 F.3d 209, 213 (D.C. Cir. 2009).

II

Plaintiffs claim the lump-sum payments they received were worth less than annuities they could have received under the Plan, and therefore violated the actuarial equivalence requirement of § 1054(c)(3). As they see it, U.S. Airways calculated each lump-sum payment to be worth as much as the annuity on the annuity start date, but then withheld payment until 45 days after the annuity start date. According to Plaintiffs, U.S. Airways thus owed them the interest on their lump sums for the 45 days between the annuity start date and the lump sum payment date. On the other hand, PBGC argues it does not matter whether Plaintiffs actually received their lump sum payments on the annuity start date so long as the Plan accurately calculated lump sums that were equivalent to the annuity at the time they were calculated.

ERISA establishes minimum standards for private pension plans. If a plan allows retirees to select a lump-sum payment in lieu of an annuity—the lump sum payment "shall be the actuarial equivalent" of the annual benefit. 29 U.S.C.

§ 1054(c)(3); *see also Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000) (noting that ERISA requires lump sum payments to "be worth at least as much as that annuity"). Although ERISA does not further define actuarial equivalence, we assume Congress intended that term of art to have its established meaning. *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 342 (1991). Two modes of payment are actuarially equivalent when their present values are equal under a given set of actuarial assumptions. *See* JEFF L. SCHWARTZMANN & RALPH GARFIELD, EDUCATION & EXAMINATION COMM. OF THE SOCIETY OF ACTUARIES, ACTUARIALLY EQUIVALENT BENEFITS 1, EA1-24-91 (1991), *available at* http://www.soa.org/files/pdf/edu-2009-fall-ea1-02-sn.pdf. One such assumption is that payment begins on the annuity start date.

Actuarial equivalence prohibits a lump-sum payment that does not include the full value of the benefits a retiree would otherwise receive if he were to receive his pension in the form of an annuity. *See Contilli v. Local 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 722 (7th Cir. 2009) (concluding a plan's lump-sum payment violated § 1054(c)(3) because it failed to adjust for post-retirement, pre-application benefits); *Miller v. Xerox Corp. Retirement Income Guarantee Plan*, 464 F.3d 871, 874 (9th Cir. 2006) (same for failure to adjust for previous distribution offsets). But § 1054(c) does not address whether (or to what extent) interest is owed when an actuarially equivalent pension is paid late. By comparison, § 1054(e)(3) requires a defined benefit plan to repay distributions that improperly reduce employee service credit with "interest at the rate determined for purposes of subsection (c)(2)(C)." 29 U.S.C. § 1054(e)(3). Because there is no dispute U.S. Airways accurately calculated Plaintiffs' lump sums to be the "actuarial equivalent" of the annuity option as of the annuity

start date, the lump sum payment does not violate § 1054(c)(3).

But a pension plan could not satisfy ERISA by correctly calculating an actuarially equivalent lump sum, then delaying payment of that sum indefinitely. To this end, an Internal Revenue Service (IRS) regulation provides that "[a] payment shall not be considered to occur after the annuity starting date merely because actual payment is reasonably delayed for calculation of the benefit amount if all payments are actually made." 26 C.F.R. § 1.401(a)-20 (Question & Answer 10(b)(3)); *cf. Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 918 (2d Cir. 1987) (noting the IRS is "one of the agencies charged with administering ERISA"). By distinguishing the annuity starting date from the date of actual payment, *see id.* (Question & Answer 10(b)(2)) ("The annuity starting date is the first date for which an amount is paid, not the actual date of payment."), section 1.401(a)-20 bolsters our conclusion that U.S. Airways' late payment of Plaintiffs' lump sums does not violate § 1054(c)(3). Nevertheless, the IRS regulation permits only "reasonable delays" in payment.

The remaining question is whether U.S. Air's 45-day delay was reasonable. It was not. According to an analysis U.S. Air conducted during the 1990s, calculation of a lump sum payment took at most 21 business days: 7 to 10 business days to complete data checks and benefit calculations, 2 to 3 business days to review the calculations and check for qualified domestic relations, 3 to 5 business days to transmit a check, and 3 business days to review the check. Twenty-one business days corresponds to approximately one calendar month. Aside from restating the process required to calculate lump sum payments, PBGC makes no argument explaining why Plaintiffs' lump sums were additionally delayed. In the absence of any contrary evidence, U.S. Air's 45-day delay

appears unrelated to the administrative calculation of Plaintiffs' lump sum benefits. And, because the delay does not correspond to administrative necessity, it is not "reasonable."[1] *See* 26 C.F.R. § 1.401(a)-20 (Question & Answer 10(b)(3)). Plaintiffs' expert evidence that 45 days is outside of the industry norm bolsters this conclusion. He said that "in practice" pension plans deem delays of 30 days or less—not 45 days—as "reasonable."

The Dissent argues remanding this case "may well open the courthouse doors to litigation over de minimis amounts of interest accrued during a few weeks or even days." Diss. Op. at 3. But again, future plaintiffs may recover only interest when lump-sum payments are *unreasonably* delayed. Plan administrators may demonstrate in any given case a delay is reasonable because it relates to the administrative calculation of lump sum benefits—a task, undoubtedly, made more difficult the longer the delay. In this way, the probability of litigation is correlated with the length of delay. Settlement is likely when delays are lengthy and difficult to tie to administrative necessity; litigation is unlikely when delays are small and any potential recovery may not cover the costs of litigation. Thus, the flood the Dissent fears may amount to a mere trickle. And to the extent the courthouse doors are open to suits concerning sizable and unreasonable delays, they should be.

---

[1] The Dissent argues I "omit one important detail," namely, that "the pension plan administrator has to know the pilot's 'Final Average Earnings.'" Diss. Op. at 2. But the Dissent's conclusion this calculation potentially takes 18 days is a red herring. That the paycheck pilots receive on the 18th of every month "reflects actual earnings for the month" says nothing of how long it took the Plan to calculate those earnings. Moreover, given pilots' mandatory retirement on their 60th birthday, the Plan has notice of when a pilot will retire and can plan accordingly.

In sum, Plaintiffs' lump sums were the "actuarial equivalent" of the annuity option under the Plan at the time of the annuity start date. Because U.S. Air unreasonably delayed payment, however, Plaintiffs are entitled to interest.

### III

Plaintiffs also argue they are entitled to attorney's fees. The default "American rule" is that the prevailing party does not receive attorney's fees. To receive attorney's fees, Plaintiffs must identify some circumstance that overcomes that default rule. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257–60 (1975). ERISA provides for attorney's fees in certain actions against private plan administrators, *see* 29 U.S.C. § 1303(f)(3), but the statute does not authorize attorney's fees for actions against the PBGC, such as this case. Plaintiffs cite 28 U.S.C. § 2412(b) as an authorization for attorney's fees. Section 2412(b) allows fees against the Government "to the same extent that any other party would be liable . . . under the terms of any statute which specifically provides for such an award." Here, however, plaintiffs are suing under 29 U.S.C. § 1303(f), and no party other than the Government can be liable under that statute, because 1303(f) provides a cause of action only against the PBGC. Section 2412(b) thus does not authorize attorney's fees in this case.

### IV

We reverse the judgment of the District Court with respect to Plaintiffs' actuarial equivalence claim. The amount of Plaintiffs' lump sum benefit was equal to the actuarial present value of the annuity payments Plaintiffs would have received under the Plan's default payment option. Even so,

U.S. Air's 45-day delay in paying Plaintiffs was unrelated to the calculation of Plaintiffs' benefits, and therefore not reasonable under existing IRS regulations. We therefore remand to the district court to calculate the appropriate amounts due Plaintiffs. In addition, we affirm the judgment of the district court that Plaintiffs are not entitled to attorney's fees.

*So ordered.*

KAVANAUGH, *Circuit Judge*, concurring in the judgment:[1]

I concur only in the judgment. In my view, Stephens and Mahoney should receive interest for the full 45 days that U.S. Airways delayed payment of their lump sum pensions.

Under ERISA, if a pension plan allows retirees to select a lump sum payment in lieu of an annuity, the lump sum payment "shall be the actuarial equivalent" of the annuity. 29 U.S.C. § 1054(c)(3). That means that the lump sum must "be worth at least as much as that annuity." *Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000). The lump sums that plaintiffs received were worth less than the plan's annuity option. Therefore, those lump sum payments violated ERISA.

There is no dispute that U.S. Airways accurately calculated plaintiffs' lump sums to be the "actuarial equivalent" of the annuity option as of the annuity start date. There is also no dispute that the plan paid those lump sum amounts 45 days after the annuity start date. The question before this Court is therefore simple: If a lump sum and an annuity would be actuarially equivalent if the lump sum were paid on the annuity start date, is the same lump sum amount actuarially equivalent to the annuity when the lump sum is actually paid 45 days later than the annuity start date?

In my view, the answer is also simple: No. Money later is not the same as money now. Receiving $1000 45 days from now is not equivalent to receiving $1000 now, because (among other things) that $1000 can earn interest every day one has it. It is true that the concept of actuarial equivalence

---

[1] Judge Brown's opinion is the controlling opinion in this case because it presents the narrowest grounds of the opinions forming a majority. *See Marks v. United States*, 430 U.S. 188, 193 (1977).

can be difficult to apply in some cases – for example, when comparing the value of health insurance plans that offer different menus of benefits. But the concept is easy to apply here. Money has time value. And because the lump sum payments had the same value as the annuity on the annuity start date, the lump sums U.S. Airways paid 45 days later were worth less than the annuity. U.S. Airways' pension plan thus violated ERISA's requirement that lump sum payments "be the actuarial equivalent" of the plan's annuity option. 29 U.S.C. § 1054(c)(3); *see also Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 759 (7th Cir. 2003) (Posner, J.) ("The basic tradeoff involved in determining actuarial equivalence between a lump sum and an accrued pension benefit is between a present and a future value, and the method of equating them is the application of a discount rate to the future value.").

According to PBGC, so long as U.S. Airways accurately calculated lump sums that were equivalent to the annuity on the annuity start date, it does not matter that the delayed lump sums plaintiffs actually received were less valuable than the theoretical, timely lump sums. But ERISA's actuarial equivalence requirement serves to protect actual retirees, not merely to ensure that pension plans correctly perform abstract calculations. Therefore, "ERISA requires actuarial equivalence between the *actual distribution* and the accrued benefit it replaces." *Miller v. Xerox Corp. Retirement Income Guarantee Plan*, 464 F.3d 871, 874 (9th Cir. 2006) (emphasis added). A pension plan could not satisfy ERISA by correctly calculating an actuarially equivalent lump sum, then paying only half that sum to a retiree. Similarly, a pension plan cannot satisfy ERISA by correctly calculating an actuarially equivalent lump sum, then delaying payment of that sum until a date when the sum has become less valuable.

U.S. Airways – and now PBGC, as U.S. Airways' successor – owes plaintiffs the difference in value between the lump sums plaintiffs received and the value of those sums 45 days earlier on the annuity start date. That difference in value is, of course, the interest on plaintiffs' lump sum pensions for the 45 days that the pension plan delayed payment of those pensions. *See Contilli v. Local 705 Int'l Brotherhood of Teamsters Pension Fund*, 559 F.3d 720, 722 (7th Cir. 2009) (Easterbrook, C.J.) ("payments skipped as a result of the deferral must be made up, either by payment (with interest) once the deferral ends, or by a suitable actuarial adjustment to the ongoing benefits"); *see generally Esden*, 229 F.3d at 163-65.

To be sure, ERISA tolerates reasonable delays for a plan to calculate and make a lump sum payment. But any delayed payment must be made "with interest" in order to ensure that "the value of the pension is [not] lower than one that begins on the normal retirement date." *Contilli*, 559 F.3d at 722. ERISA's actuarial equivalence requirement contains no exception permitting a plan to withhold interest payments for administrative delays. *See* 29 U.S.C. § 1054(c)(3). Put another way, ERISA permits pension plans to reasonably delay lump sum payments, but it requires that delayed lump sum payments remain actuarially equivalent to annuity payments. Here, that means these plaintiffs were entitled to interest for the 45 days that U.S. Airways delayed payment of their lump sum pensions – regardless of whether U.S. Airways' delay in making the actual payments was reasonable.

In ignoring the effect of the delay on the value of the lump sum payments that plaintiffs received, PBGC cites an IRS regulation establishing that reasonable administrative delays in a pension's annuity payments do not affect

survivorship benefits claims. *See* 26 C.F.R. § 1.401(a)-20, Q&A-10(b)(3). But that IRS regulation says nothing about whether interest is due on delayed payments, and likewise says nothing about ERISA's requirement that lump sums (delayed or otherwise) be actuarially equivalent to annuities.

PBGC also relies on a statement by plaintiffs' expert that pension plans "in practice" often deem delays of 30 days or less "reasonable" and do not pay interest. J.A. 430-31. Plaintiffs' expert did not say that late payments *are* actuarially equivalent, only that "in practice" some pension plans pretend that late payments are actuarially equivalent. Regardless of whether some pension plans ignore ERISA's requirements at the margins, the law is clear, and we should enforce it as written in this case. [2]

---

[2] I agree with the controlling opinion in affirming the District Court's denial of plaintiffs' request for attorney's fees.

KAREN LECRAFT HENDERSON, *Circuit Judge*, dissenting in part:

While we all agree that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, does not allow the plaintiffs to recover attorneys' fees in their suit against the Pension Benefit Guaranty Corporation (PBGC), *see* Opinion of Judge Brown (Brown Op.) at 8; Opinion of Judge Kavanaugh (Kavanuagh Op.) at 4 n.1, I also believe that they are not entitled to recoup forty-five days' interest for the delayed payment of their lump sum benefits. Accordingly, I dissent in part.

The actuarial equivalence requirement set forth in 29 U.S.C. § 1054(c)(3) is "clear," Kavanaugh Op. at 4, and requires a lump sum payment to be " 'worth at least as much as' " an annuity commencing at the normal retirement age, Brown Op. at 4–5 (quoting *Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000), *cert. dismissed*, 531 U.S. 1061 (2001))—which annuity, under the U.S. Airways plan, becomes due on the "Benefit Commencement Date," the first day of the month following the pilot's sixtieth birthday. Moreover, Judge Brown and I agree that as long as the lump sum benefit is equivalent to the present value of a pilot's retirement benefit calculated as of his Benefit Commencement Date, payment may be "reasonably delayed" without running afoul of the actuarial equivalence rule. Brown Op. at 5–6. Any other interpretation could impose a daunting administrative burden on a pension plan administrator, requiring interest to be paid or benefits to be recalculated for even the slightest delay in payment—including, for instance, the time it takes for a pension check to travel through the mail. As Judge Brown notes, the Internal Revenue Service (IRS)—"one of the agencies charged with administering ERISA," *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 918 (2d Cir. 1987), *cert. denied*, 485 U.S. 936 (1988)—sensibly avoids this burdensome result by creating an exemption for a reasonable delay in payment. Brown Op. at 6; *see* 26 C.F.R. § 1.401(a)-20, Q&A-10(b)(3). The IRS regulation states: "A payment *shall not be considered to occur* after the annuity starting date merely

because actual payment is reasonably delayed for calculation of the benefit amount if all payments are actually made." 26 C.F.R. § 1.401(a)-20, Q&A-10(b)(3) (emphasis added). Put another way, we must "consider[]" the lump sum payments here to have "occur[red]" *on* each plaintiff's respective Benefit Commencement Date so long as payment was only "reasonably" delayed.[1]

I have no doubt that payment was "reasonably" delayed—and here I part ways with Judge Brown. According to Judge Brown, it was reasonable for U.S. Airways to delay payment while its pension plan administrator calculated benefits, reviewed these calculations, checked for qualified domestic relations orders, cut the check and then sent it to the pilot. Brown Op. at 6–7. These tasks required fifteen to twenty-one business days to complete—corresponding to roughly three to four calendar weeks. Judge Brown, however, omits one important detail. In order to begin calculations in the first place—and set the three- to four-week process in motion—the pension plan administrator has to know the pilot's "Final Average Earnings," a number derived in part from the pilot's earnings during his final month before retirement. Unlike a salaried employee, a pilot working for US Airways earns an hourly wage. His pay can fluctuate considerably from one month to the next based on the number of hours logged and differentials for night pay, "overwater pay" and other adjustments. Weidenmuller Dep. at 65–66 (Joint Appendix (JA)

---

[1]Although the regulation on its face applies only to a joint and survivor annuity, I nevertheless believe it should guide our analysis because there is no practical difference from a pension plan administrator's point of view between paying a joint and survivor annuity and paying a lump sum benefit. I note that the regulation is "written in question and answer form" but "[t]his novel format does not alter [its] weight as regulation[]." *Hurwitz v. Sher*, 982 F.2d 778, 782 n.4 (2d Cir. 1992), *cert. denied*, 508 U.S. 912 (1993).

185–86). Because of the month-to-month variance, the pilot's final-month earnings are not calculated and finalized until the eighteenth day of the month following his retirement.[2] Taking into account the eighteen-day delay at the front end, I calculate the *entire* sequence—from computing a pilot's final-month salary to payment of his lump sum benefit—required roughly forty to forty-five days.

Judge Brown maintains that we should not take into account the eighteen-day period for computing a pilot's final-month earnings because the pension plan administrator knows the pilot's retirement date in advance and "can plan accordingly." Brown Op. at 7 n.1. The unknown quantity, however, is not the date of the pilot's retirement but the amount of his final-month earnings—which, as noted above, varies from one month to the next. Judge Brown also seems to doubt whether eighteen days is really necessary to calculate the pilot's final-month earnings. *See id.* (eighteen-day delay "says nothing of how long it took the Plan to calculate [final-month] earnings"). The burden of proof, however, does not rest on US Airways (or its successor, the PBGC) to establish the reasonableness of the forty-five day delay in paying the plaintiffs' lump sum benefits. Rather, it is the plaintiffs' burden to establish the unreasonableness of the delay—including both the eighteen-day period to compute final-month earnings and the two- to three-week period to calculate the lump sum benefit amount. *Cf. Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (ERISA plaintiff "bears the burden of proving his entitlement to contractual benefits"). Because the plaintiffs have not carried their burden, I would affirm the district court's denial of interest.

---

[2]For example, plaintiff Stephens retired on November 25, 1996. His earnings for the month of November were calculated and he received his final paycheck—reflecting his November earnings—on December 18, 1996. Only then did the pension plan administrator have the necessary information to calculate Stephens's lump sum benefit.

My colleagues' decision to remand may well open the courthouse doors to litigation over de minimis amounts of interest accrued during a few weeks or even days. The plaintiffs' victory is hollow to say the least in light of our holding denying attorney's fees; they are left with a four-digit recovery and, undoubtedly, five- or even six-digit legal costs. Moreover, Judge Brown concedes that a delay of up to thirty days would be reasonable. Brown Op. at 6–7. Because she and I agree that US Airways acted reasonably at least up to the thirty-day mark, the plaintiffs should recover—at most—fifteen days' interest, meaning they should receive no more than one-third of the amount they are asking for. The difference is important given the likelihood that on remand the plaintiffs will ask for prejudgment interest going back roughly fifteen years (Stephens) and twelve years (Mahoney). *See Moore v. CapitalCare, Inc.*, 461 F.3d 1, 12 (D.C. Cir. 2006) (prejudgment interest "*presumptively* appropriate" for unpaid ERISA benefits). Assuming the plaintiffs do so, the applicable interest rate is within the district court's discretion, *see Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1139 (D.C. Cir. 1999). Given the significant decline in long-term interest rates, however, I doubt that the rate of 6.25 per cent, suggested by the plaintiffs' expert, Poulin Decl. ¶ 8, would be a proper rate to carry the interest forward to the judgment date. *See* Pension Benefit Guar. Corp., *Lump Sums*, http://www.pbgc.gov/prac/interest/vls.html (last visited June 1, 2011).

Finally, because the plaintiffs are entitled only to "appropriate equitable relief" under ERISA, 29 U.S.C. § 1303(f)(1), it is worth noting that they have already received more than many U.S. Airways annuitants will ever see. U.S. Airways pilots who reached retirement age after April 1, 2000—a few years after plaintiff Stephens and just thirteen months after plaintiff Mahoney—received nothing from the distribution of plan assets and thus had their benefits capped at

5

the statutory maximum of $28,585.20 per year, *see* 29 U.S.C. § 1322(a)–(b); 29 C.F.R. pt. 4011, app. B; Press Release, Pension Benefit Guar. Corp., PBGC Becomes Trustee of US Airways Pension Plan for Pilots (Apr. 1, 2003) [http://www.pbgc.gov/news/press/releases/pr03-32.html], in some cases collecting less than 50 cents on the dollar. *In re US Airways Grp., Inc.*, 296 B.R. 734, 741 (Bankr. E.D. Va. 2003); Nanette Byrnes & David Welch, *The Benefits Trap*, Bus. Wk., July 19, 2004; Kathleen Pender, *What They'll Get: How Pension Agency Pays Out*, S.F. Chron., May 12, 2005, at C1. It hardly seems equitable to gild the plaintiffs' lily, even minimally, when they are already far better off than their hapless annuitant peers.

Accordingly, I respectfully dissent in part.